# In the United States Court of Federal Claims

No. 18-696V
(Filed: February 6, 2023)
(Reissued: March 1, 2023)*
**FOR PUBLICATION**

***************************************
| | |
|---|---|
| CHAD SHELLER, | * |
| as personal representative of the | * |
| estate of DANIEL ELIAS SHELLER, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH AND | * |
| HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

***************************************

*Jennifer Anne Gore Maglio*, Maglio Christopher & Toale, Sarasota, FL, for Petitioner. With her on briefs was *Anne Carrion Toale*, Maglio Christopher & Toale, Sarasota, FL.

*Rachelle P. Bishop*, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for Respondent. With her on briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *C. Salvatore D'Alessio*, Director, *Heather L. Pearlman*, Deputy Director, and *Christine Mary Becer*, Vaccine/Torts Branch, Civil Division.

## OPINION AND ORDER

Petitioner Chad Sheller ("Petitioner") voluntarily dismissed his vaccine compensation claim and requested attorney's fees. The Special Master denied fees, *see* Decision on Attorneys' Fees & Costs ("Decision") (ECF 63), and Petitioner moved for review.[1] The Motion for Review is **DENIED**.

---

* This Opinion and Order was issued under seal on February 6, 2023. The parties were directed to propose redactions by February 21, 2023. No proposed redactions were submitted. The Court hereby releases publicly the Opinion and Order of February 6 in full.

[1] *See* Pet.'s Mot. for Review of Decision ("Mot.") (ECF 67); Pet.'s Mem. in Supp. of Mot. to Review ("Mem.") (ECF 67-1). The government opposes the motion. *See* U.S. Resp. to Mot. for Review ("Resp.") (ECF 70).

## BACKGROUND

Petitioner's son Daniel died at the age of two months. *See* Pet.'s Medical Records Ex. 2 at 2 (ECF 8-3). Neither the initial medical examination nor an autopsy determined a cause of death, although the autopsy did find focal petechiae and congestion in Daniel's lungs. *See id.* at 4; Pet.'s Medical Records Ex. 3 at 21 (ECF 8-4). In his short life, Daniel received several vaccinations. *See* Pet.'s Medical Records Ex. 1 at 2 (ECF 8-2); Ex. 2 at 64. Petitioner sought relief under the National Childhood Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 to 34 ("Vaccine Act").

Petitioner originally intended to base his theory of causation — an element of Vaccine Act claims, 42 U.S.C. §§ 300aa-13(a)(1), 300aa-11(c)(1)(C)(ii)(I) — on the "Triple Risk Model" of vaccine-triggered sudden infant death syndrome ("SIDS") proposed by Dr. Douglas C. Miller. Pet.'s Additional Documentation Ex. 20 (ECF 52-2). That theory suggests, in essence, that a vaccine can be an "exogenous stressor" that triggers SIDS in otherwise-vulnerable infants. Mem. at 11. But while the case was pending before the Special Master, the Federal Circuit held that Dr. Miller's application of the Triple Risk Model in a vaccine case was "an unsound and unreliable theory." *Boatmon v. Sec'y of Health & Hum. Servs.*, 941 F.3d 1351, 1361 (Fed. Cir. 2019). In light of that decision, Petitioner voluntarily dismissed his claim. Pet.'s Mot. for Dismissal Decision (ECF 33).

Petitioner then sought an award of attorneys' fees. Pet.'s Mot. for Attorneys' Fees (ECF 38). After the government initially responded that it was "satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case," U.S. Resp. to Mot. for Attorneys' Fees at 2 (ECF 39), the Special Master twice ordered the parties to answer questions about Petitioner's reasonable basis and requested that the government provide a more detailed response to the fees motion, including a firmer position on whether Petitioner had a reasonable basis. July 28, 2020 Order (ECF 41); Aug. 23, 2021 Order (ECF 48). In responding to the Special Master's questions, the government changed course — first deferring to the Special Master on fees, U.S. Resp. to Order (ECF 45), then opposing Petitioner's request for the first time, U.S. Resp. to Mem. (ECF 54). The Special Master heard oral argument on the matter, *see* Tr. (ECF 59), and denied Petitioner's request for fees. *See* Decision at 1.

Petitioner moved for review, arguing that the Special Master violated fundamental fairness, applied the wrong standard of proof, and ignored or misinterpreted relevant evidence. *See* Mem. at 4–6, 17–18.

## DISCUSSION

### I. Legal Standards

Petitioners who have been denied compensation under the Vaccine Act may nonetheless be eligible for an award of attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1).[2] A petitioner is eligible for fees if "the petition was brought in good faith and there was a reasonable basis for the claim." *Id.* "Good faith" and "reasonable basis" are separate elements. *See Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). The government does not challenge Petitioner's good faith, only the reasonableness of his basis for the petition.

In order to establish a reasonable basis, a petitioner must meet an evidentiary burden "'lower than the preponderant evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'" *James-Cornelius on Behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) (quoting *Cottingham on Behalf of K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020)). The petitioner must have had a reasonable basis at the time the petition was filed. *Cottingham*, 971 F.3d at 1344.

In reviewing a Special Master's decision, "[f]act findings are reviewed ... under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). Even when a petitioner satisfies the good faith and reasonable basis standards, "a special master retains discretion to grant or deny attorneys' fees." *James-Cornelius*, 984 F.3d at 1379 (citing 42 U.S.C. § 300aa-15(e)(1)).

### II. The Special Master Did Not Violate Fundamental Fairness

Petitioner argues that the Special Master violated fundamental fairness when he ordered the government to answer questions after it initially declined to oppose attorney's fees. Mem. at 18–20; Resp. at 2. Special masters are bound by an obligation to be fair to both parties, and to provide both parties the opportunity to present a case. *See* RCFC App. B, Rule 8(b)(1) ("In receiving evidence, the special master … must consider all relevant and reliable evidence governed by principles of

---

[2] Counsel in vaccine cases are prohibited from charging fees in addition to any award of fees and costs. 42 U.S.C. § 300aa-15(e)(3). Statutory awards of attorneys' fees thus go solely to counsel, not to reimburse their clients for any hourly rate or contingency fee. Cases nonetheless typically refer to motions by, and awards to, Vaccine Act petitioners, even when the petitioner has received no award and has nothing to gain from an attorneys' fee decision. *See, e.g., Chuisano v. United States*, 116 Fed. Cl. 276 (2014); *Simmons v. Sec'y of Health & Hum. Servs.*, 128 Fed. Cl. 579 (2016); *R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010 (Fed. Cir. 2019).

fundamental fairness to both parties."); *id.* Rule 3(b)(2) ("The special master is responsible for … affording each party a full and fair opportunity to present its case[.]"); *see also Dickerson v. Sec'y of Dep't of Health & Hum. Servs.*, 35 Fed. Cl. 593, 598 (1996) ("[T]he Court of Federal Claims has promulgated rules of procedure for use by special masters governed by the principles of fundamental fairness to both parties."). Because special masters have a statutory duty to independently determine whether a fee award is warranted, together with inquisitorial powers that allow them to perform that duty, the Special Master did not violate fundamental fairness by requiring additional information from the government.

This Court has repeatedly held that "[t]he Vaccine Act compels each special master to determine independently whether a particular [fee] request is reasonable." *E.g.*, *Savin ex rel. Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (2008). The government cannot waive a special master's obligation by failing to oppose a fee application. *Dominguez v. Sec'y of Health & Hum. Servs.*, 136 Fed. Cl. 779, 781, 783–85 (2018); *Carrington ex rel. Carrington v. Sec'y of Dep't of Health & Hum. Servs.*, No. 99-495V, 2008 WL 2683632, at *3 (Fed. Cl. June 18, 2008). Nor is a special master "limited to the objections raised by respondent" when evaluating a fee request. *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997). As the Federal Circuit has noted, "the statute leaves it to the special master's discretion to find what constitutes reasonable fees." *Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1356 (Fed. Cir. 2011). The government, in short, cannot bind the Special Master, and the government's nonopposition or consent to a fee application therefore does not diminish the special master's duty to determine whether the statutory criteria for fees are met.

If the special master's statutory duty to evaluate a fee application is independent of the government's position on the application, it follows that his procedural powers — *i.e.*, lesser included powers that allow him to carry his statutory obligations, *see* 42 U.S.C. § 300aa-12; RCFC App. B, Rule 8 — are independent as well. Special masters perform inquisitorial roles, and so have always been afforded power to ask the parties to answer questions or clarify their positions, including as to fee applications. *Harding v. Sec'y of Dep't of Heath & Hum. Servs.*, 146 Fed. Cl. 381, 392 (2019); *see also Masias v. Sec'y of Health & Hum. Servs.*, 634 F.3d 1283, 1292 n.10 (Fed. Cir. 2011) (finding no error in special master's "inquisitorial" method of adjudication and asking parties for additional input); *Snyder ex rel. Snyder v. Sec'y of Health & Hum. Servs.*, 88 Fed. Cl. 706, 714 (2009); *Soto Galvan v. Sec'y of Health & Hum. Servs.*, 151 Fed. Cl. 789, 797 (2021). The special masters thus may exercise that power as to a fee application no matter what position the government takes.

Petitioner does not argue that the matters the Special Master inquired about — including instructing the government to take a position and asking the parties how specific cases affected their reasoning — were themselves irrelevant or otherwise improper subjects of the Special Master's interest. Petitioner instead objects that by asking additional questions, the Special Master turned the fee issue into "a second major litigation," Mem. at 19 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), and that the Special Master "subsumed" the government's role as Petitioner's adversary, *id.* The problem with those arguments is that they fail to account for the Special Master's independent obligation to assess fees even when the government consents. That independent obligation gave the Special Master discretion to require additional litigation processes that the government did not demand. If the matters the Special Master inquired about were appropriate, it could not have been fundamentally unfair for the Special Master to pursue them independently. What questions to ask was a matter for the Special Master's discretion.

Given that the government's position on the fee application in this case could not have affected the Special Master's statutory duty or the scope of his inquisitorial powers, I therefore conclude that it was not fundamentally unfair for the Special Master to inquire about the matters he chose to investigate.

### III. The Special Master Did Not Abuse His Discretion

To qualify for fees, Petitioner must have had "a reasonable basis for the claim" at the time he filed it. *Cottingham*, 971 F.3d at 1344. The Special Master concluded that Petitioner lacked a reasonable basis, and so denied fees. Petitioner objects on various legal and factual grounds.

#### A. The Special Master applied the correct legal standard.

Petitioner claims that the Special Master applied the wrong legal standard by requiring Petitioner to "show evidence supporting reasonable basis for each prong of the *Althen* test for causation." Pet.'s Mem. at 17–18; *see Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). I conclude that the Special Master did not err.

To have had a reasonable basis for a Vaccine Act claim, a petitioner must have had a reasonable basis to support each of the five statutorily required elements of his petition, one of which is causation. *See Cottingham*, 971 F.3d at 1345–46 (citing 42 U.S.C. § 300aa-11(c)(1)). "Because causation is a necessary element of a petition, [a petitioner] must point to evidence of a causal relationship between the administration of the vaccine and her injuries in order to establish that a reasonable basis for the claim existed when the petition was filed." *Id.* at 1346.

What constitutes "evidence of a causal relationship"? The Federal Circuit in *Althen* explained what causation means on the merits: For "non-Table" cases like this one, where there is no presumption of causation, the elements of causation are "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278.[3] Where *Althen* applies, its elements nest within the statutory elements of the petition as subparts of the causation requirement. Given that both the merits and the fee application incorporate a causation requirement, and that *Althen* supplies the content of the causation standard for the merits, it makes sense to apply the same standard to fees.

Petitioner's alternative is to evaluate causation in fee applications using a "totality of the circumstances" test. Mem. at 18. Although the Federal Circuit in *Cottingham* mentioned evaluation of the "totality of the circumstances" in vaccine fee applications, it has neither "endorse[d] [nor] reject[ed]" that wording as a formulation of the underlying reasonable-basis standard. *See Cottingham*, 971 F.3d at 1345 (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017)). Even when discussing this Court's use of a totality-of-the-circumstances analysis, the appeals court evaluates the evidence for "Objective Evidence of Reasonable Basis." *Id.* at 1345. The Federal Circuit's main post-*Cottingham* discussion of Vaccine Act fees does not even mention totality of the circumstances. *James-Cornelius*, 984 F.3d 1374. A totality-of-the-circumstances analysis that rests on objective, relevant evidence "comports" with the reasonable-basis standard, *Cottingham*, 971 F.3d at 1344, but it should not be confused with the standard itself. Whatever circumstantial context might be relevant to showing a reasonable basis, the statute requires matching up the evidence to the elements of a vaccine petition. *Id.* at 1345–46.

Conversely, it would be peculiar if any element of *Althen* were necessary for the merits but not for a fee application. Otherwise, an attorney could submit a petition on behalf of a client whose injury predated the vaccine — even one who has no medical theory of causation at all — lose on the merits, but still have his fees paid if the Court thought the "totality of the circumstances" still justified an award. That would only open the door for inconsistency and abuse.[4] The solution is to require that

---

[3] The causation test incorporates additional elements when a petitioner claims aggravation of an existing injury. *See Heller v. Sec'y of Health & Hum. Servs.*, No. 15-792, 2022 WL 16549430, at *19 (Fed. Cl. Oct. 31, 2022) (citing *Loving ex rel. Loving v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 135, 144 (2009)).

[4] *But see Cottingham v. Sec'y of Health & Hum. Servs.*, 159 Fed. Cl. 328, 335 (2022) (endorsing a special master's conclusion in *dicta* that "a lack of evidence under *Althen* prong two" was "not dispositive," although it "cut against a finding of reasonable basis").

petitioners raising non-Table injuries support each element of the *Althen* causation standard at both the merits and the fee application stage.

The difference between establishing causation for the merits and for a fee application, rather, is in the burden of proof. *See Cottingham*, 159 Fed. Cl. at 334 ("[R]easonable basis and entitlement to compensation differ only in the level of proof required, not in their elements."). For the merits, a petitioner must prove each element of causation by preponderance of the evidence. *Althen*, 418 F.3d at 1278. For the fee application, the petitioner's showing need only be reasonable: "[M]ore than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham*, 971 F.3d at 1346.

The Special Master in this case set out those legal principles correctly. He stated — as the governing standards require — that his "method for assessing the evidence will follow the structure from *Althen*" but that "the burden of proof is not the same." Decision at 13.[5] He also reiterated several times that only "more than a mere scintilla" of evidence was required to satisfy reasonable basis. *See* Decision at 12, 15, 18, 21. Because the Special Master correctly used *Althen* to structure his analysis, stated the correct degree of evidence required, and applied that standard to each piece of evidence he analyzed, Petitioner has not shown error in the Special Master's legal approach.

**B. The Special Master considered all relevant evidence.**

Petitioner has also argued that the Special Master misinterpreted, failed to consider, or gave incorrect weight to Petitioner's evidence. As noted above, it is for the Special Master alone to weigh evidence; I may not reweigh or reevaluate it. *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011) ("We do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder."). Rather, I consider whether the Special Master's factfinding was arbitrary and capricious, and whether his ultimate decision to deny fees was an abuse of discretion. *Bradley v. Sec'y of Dep't of Health & Hum. Servs.*, 991 F.2d 1570, 1574 (Fed. Cir. 1993) (citing 42 U.S.C. § 300aa-12(e)(2)).

---

[5] Under an alternative interpretation of the Decision, the Special Master may have meant only to structure his causation analysis around *Althen* without actually requiring a reasonable basis on each prong. But even if the Special Master was not required to consider each *Althen* prong, no authority forbids him to structure the analysis as he did, and the evidence — as discussed below — is still consistent with the Special Master's conclusion that the petition lacked a reasonable basis.

Vaccine Act petitioners must support their claims with medical records or expert opinion. Petitioner accordingly supports his fee request with (1) Daniel's medical records, in conjunction with published medical studies and packaging inserts for Daniel's vaccines; and (2) communications from Dr. Omid Akbari, an immunologist Petitioner had consulted, and Dr. Miller, the originator of the Triple Risk Model that underlay Petitioner's causation theory. After a full review of the record and the Special Master's decision, I conclude that the Special Master properly reviewed all of the evidence and that none of his conclusions were clearly erroneous or an abuse of discretion.

1. *Medical records*

Petitioner argues that medical information about Daniel's vaccines, coupled with Daniel's medical records, add up to a reasonable basis that the vaccines caused his death. He points out that the insert for one of Daniel's vaccines mentions several instances of SIDS during vaccine testing, Pet.'s Mot at 7 (citing Pet.'s Ex. 13 at 12), and that studies "have found instances of SIDS deaths and afebrile seizures following the vaccine." *Id.* at 8 (citing Pet.'s Additional Documentation Ex. 21 at 8, 9, 121 (ECF 52-3); Ex. 22 at 11 (ECF 52-4)). As for another vaccine, the Special Master notes that its package insert mentions a risk of lung infections, *id.* at 7 (citing Pet.'s Medical Literature Ex. 15 at 6), as well as febrile seizures, *id.* at 8 (citing Pet.'s Additional Documentation Ex. 21 at 8, 19, 34 123; Ex. 22 at 9). The Special Master reviewed that evidence and concluded that it did not disclose a reasonable basis for the petition under *Althen* prongs one and two.[6]

The Special Master acknowledged that "the medical records do present a chronology in which the vaccination preceded Daniel's demise." Decision at 24; *see also id.* at 26–27. But as the Special Master also noted, Daniel's medical records did not report a cause of death, let alone any of the specific adverse reactions mentioned in the literature. Decision at 2, 24. Although Daniel's lungs showed certain abnormalities, there does not seem to be any evidence that they were infected. *Id.* at 15. Nor was there evidence that Daniel suffered from a seizure of any kind. *Id.* at 19–20. Petitioner does not point to any such evidence now. Whatever risks might be associated with Daniel's vaccines in general, there was nothing to connect those risks to his particular case. *See Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.*,

---

[6] The Special Master may not have been required to include several of Petitioner's exhibits in his analysis, as they were filed after Petitioner voluntarily dismissed his entitlement claim. *See* Decision at 7–10 (citing *Goodgame v. Sec'y of Health & Hum. Servs.*, 157 Fed. Cl. 62 (2021); *Contreras v. Sec'y of Health & Hum. Servs.*, No. 19-491V, 2022 WL 2302208, at *9 (Fed. Cl. Spec. Mstr. May 31, 2022)). While the Special Master struck several articles he considered irrelevant (a decision Petitioner does not challenge now), he opted to review other medical articles out of an abundance of caution and to maintain fairness. *Id.* at 10.

592 F.3d 1315, 1322 (Fed. Cir. 2010); *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010) ("[A] petitioner must provide a reputable medical or scientific explanation that pertains specifically to the petitioner's case[.]").

Another problem the Special Master observed is that even if Daniel died of SIDS, the studies Petitioner relied upon do not show that the vaccines are linked to that condition. Rather, the SIDS rates associated with the vaccines are consistent with population background levels. Decision at 15. Nor did other studies Petitioner submitted show an elevated risk of infant death. *Id.* at 19. If there is no association between vaccines and a given condition, there cannot be a causal relationship either. *Doles v. Sec'y of Health & Hum. Servs.*, 159 Fed. Cl. 241, 248 (2022) ("Although there can be association without causation, there cannot be causation without association.").

In short, there was no evidence that the conditions identified in Daniel's records were associated with the vaccines, nor evidence that any conditions associated with the vaccines appeared in Daniel's records. The Special Master thus reasonably concluded that there was nothing in the medical record creating a reasonable basis to claim that the vaccines caused Daniel's death.

### 2. Medical opinions

Petitioner presented two communications from doctors who had reviewed Daniel's record and related medical literature. But the Special Master determined that neither provided a reasonable basis under *Althen* prongs one and two.

Dr. Akbari wrote to Petitioner that while he "cannot draw any definitive conclusions," his review of medical literature suggested it would be "reasonable to conduct further inquiry including laboratory work." Pet.'s Ex. 5 at 2 (ECF 8-6). As the Special Master observed, Dr. Akbari "did not offer an opinion that any vaccine caused Daniel's death," nor did he "present[] any theory by which vaccines can cause an infant's death." Decision at 14. The Special Master acknowledged Dr. Akbari's review of medical literature, but discounted some of it for reasons mentioned above, and the rest of it because it had not been placed in the record. *Id.* at 14–15. He therefore considered it only weak evidence of causation that did not amount to a reasonable basis.

That was not arbitrary and capricious or clearly erroneous. The Special Master described Dr. Akbari's letter accurately: It was only a call for further study that specifically disclaimed any opinion on causation. Petitioner does not identify any concrete factual errors in the Special Master's discussion of Dr. Akbari's sources, and so the Special Master was entitled to give little weight to Dr. Akbari's interpretation of them. *See Porter*, 663 F.3d at 1249 ("We do not reweigh the factual evidence, assess

whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses — these are all matters within the purview of the fact finder."). Most importantly, given that the governing standard for fees required Petitioner (in the absence of medical records) to show a reasonable basis that he could support a medical theory of causation with a medical opinion, *Althen*, 418 F.3d at 1278; *James-Cornelius*, 984 F.3d at 1379, the Special Master was within his authority to discount a non-opinion lacking a causal theory.

The other communication Petitioner relies on is an email from Dr. Miller, who said that Daniel had experienced "a classical case of SIDS." Pet.'s Ex. 20. He offered to "write a report based on the statitsitcs [sic] … as to what percentage of SIDS infants' brains will have medullary abnormalities, and how that fits with vaccine-induced cytokines," but said that in Daniel's medical record "there are no sections of medulla to prove any possible structural abnormality." *Id.* Viewed in light of *Boatmon*, that would appear to mean that Dr. Miller could report on the statistical incidence of certain brain conditions in SIDS patients, and on the risks vaccines pose to patients with those conditions, but that he would not be able to connect his opinions to Daniel's own medical record. 941 F.3d at 1356. His email does not opine that the vaccine caused Daniel's death, nor does he expressly offer to provide such an opinion, but he did — giving Petitioner the benefit of the doubt — appear willing to opine that Daniel's death could be explained by the Triple Risk Model of SIDS.

As the Special Master noted, "[a]n offer to write a report differs from a report." Decision at 17. In addition, "[w]hile Dr. Miller might have been able to present a theory how childhood vaccines might cause an infant's death, Dr. Miller's email does not persuasively identify a basis for opining that Daniel's death was, more likely than not, due to a vaccination." *Id.* at 25. Although the Special Master correctly acknowledged that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis," *id.* (quoting *James-Cornelius*, 984 F.3d at 1379), he reasonably concluded that Dr. Miller's equivocal email did not amount to a reasonable basis for causation.

Petitioner maintains that Dr. Miller would actually have provided a report, and he observes that at the time Dr. Miller wrote his email, a similar opinion of his had been accepted as a theory of causation by the special master in *Boatmon*. Mem. at 11. Petitioner therefore argues that it would have been reasonable to rely on Dr. Miller's opinion here. The Special Master acknowledged that "the presence of the special master's ruling in *Boatmon* made the claim that vaccines can cause an infant's death feasible," but concluded that too fell short of a reasonable basis. Decision at 21–22. I agree.

To begin with, even if the eventual reversal of the special master's *Boatmon* decision cannot be held against Petitioner, *see* Decision at 21, the principle that "expert opinion … grounded in neither medical literature nor studies" but only in "unsupported speculation" cannot support Vaccine Act attorneys' fees was hardly new. *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). As the Federal Circuit observed in *Boatmon*, Dr. Miller's application of the Triple Risk Model in the vaccine context was unsupported by research, or even by other members of the medical community, 941 F.3d at 1360–61, and his application of the theory to the SIDS death in *Boatmon* rested on impermissible statistical inference, *id.* at 1362–63. Those flaws were readily apparent all along; Petitioner and his counsel overlooked them at their own risk. *Perreira*, 33 F.3d at 1377 ("[C]ounsel's duty to zealously represent their client does not relieve them of their duty to the court to avoid frivolous litigation."). A special master's decision is binding on no one. *See Rickett v. Sec'y of Health & Hum. Servs.*, 468 F. App'x 952, 959 (Fed. Cir. 2011) ("It is well-settled that '[s]pecial masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand.'") (quoting *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998)). It is not necessarily reasonable to rely on an erroneous decision just because it has not been reversed yet.

Petitioner responds that this is a "pipeline case" premised on *Boatmon*, and that because "this case was in the 'pipeline' when the triple risk model theory was still potentially viable, … the case had a reasonable basis." Mem. at 13. But that is only special pleading.[7] The Vaccine Act attorney's fees provisions make no reference to pipeline cases; neither do the Federal Circuit's cases clarifying the standard.[8] Just as some hold that "[t]here is no such thing as political bombing or political violence," *Speech in Belfast on March 5th, 1981*, Margaret Thatcher, https://www.margaretthatcher.org/document/104589, there is no such thing as a pipeline case. A case is a case is a case, *id.*, and the same reasonable-basis standard applies across the board. A petitioner cannot justify an unreasonable causation theory in one case with the theory's acceptance in another case.

---

[7] Special pleading is a logical fallacy wherein one recognizes that a "rule, principle, or law applies to all people alike" but "wishes to make himself or herself or another an exception to it" while "no evidence is provided for making that exception." T. EDWARD DAMER, ATTACKING FAULTY REASONING 171 (6th ed. 2009).

[8] Petitioner's authority, *Hooker v. Secretary of Health & Human Services*, No. 02-472V, 2017 WL 3033940 (Fed. Cl. Apr. 11, 2017), stands only for the unremarkable proposition that when there was a reasonable basis for filing cases that were ultimately unsuccessful, there might also be a reasonable basis for similar cases that were brought at about the same time and later voluntarily dismissed. *Id.* at *12–13.

- 11 -

If there were such a thing as a "pipeline" justifying attorneys' fees, this would not be the right case for it. As the Special Master observed, by the time the *Boatmon* special master adopted Dr. Miller's Triple Risk Model, several other special masters had rejected it. *See* Decision at 11–12 (citing *Jewell v. Sec'y of Health & Hum. Servs.*, No. 11-138V, 2016 WL 5404165, at *13 (Fed. Cl. Spec. Mstr. Aug. 29, 2016); *Copenhaver v. Sec'y of Health & Hum. Servs.*, No. 13-1002V, 2016 WL 3456436, at *18 (Fed. Cl. Spec. Mstr. May 31, 2016), *mot. for rev. denied*, 129 Fed. Cl. 176 (2016); *Lord v. Sec'y of Health & Hum. Servs.*, No. 12-255V, 2016 WL 806818, at *14 (Fed. Cl. Spec. Mstr. Feb. 9, 2016); *Cozart v. Sec'y of Health & Hum. Servs.*, No. 00-590V, 2015 WL 6746616, at *13 (Fed. Cl. Spec. Mstr. Oct. 15, 2015), *mot. for rev. denied*, 126 Fed. Cl. 488 (2016)). If Petitioner were right, Vaccine Act counsel could wait for anomalous outlier decisions adopting unreasonable causation theories, file as many claims based on those theories as they could find, and claim their fees after the triggering decision was reversed — all without a single actual *petitioner* receiving anything.

The Special Master therefore did not act arbitrarily or capriciously in declining to find that Dr. Miller's communications, even in light of *Boatmon*, created a reasonable basis for the Petition.

## CONCLUSION

For the foregoing reasons, the motion for review (ECF 67) is **DENIED** and the decision of the Special Master (ECF 63) is **SUSTAINED**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge