# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| CHAD SHELLER, as personal representative of the Estate of DANIEL SHELLER * * * | |
| Petitioner, * * | No. 18-696V |
| | Special Master Christian J. Moran |
| v. * * | |
| | Filed: March 27, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, * * * | |
| Respondent. * | |

* * * * * * * * * * * * * * * * * * * *

<u>Jennifer Anne Gore Maglio and Anne Toale</u>, Maglio Christopher & Toale, Sarasota, FL, for petitioner;
<u>Rachelle Bishop</u>, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION ON REMAND
AWARDING ATTORNEYS' FEES AND COSTS**[1]

Mr. Sheller alleged the hepatitis B, diphtheria-tetanus-acellular pertussis, inactivated polio, and haemophiles influenza type B, and Prevnar 13 vaccines his son, Daniel, received on April 15, 2016, June 14, 2016, and June 21, 2016, caused his son's death. After Mr. Sheller dismissed his case voluntarily, he sought an

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

award of attorneys' fees and costs as the Vaccine Act allows. Mot. for Attorneys' Fees and Costs, filed March 19, 2020. Mr. Sheller's motion for attorneys' fees and costs was denied. First Fees Decision, 2022 WL 4075946 (Fed. Cl. Spec. Mstr. Aug. 15, 2022).

Mr. Sheller contested this determination. Pet'r's Mot. for Rev., filed Sept. 14, 2022. The Court of Federal Claims denied the motion for review on February 6, 2023. 164 Fed. Cl. 398 (2023). Mr. Sheller appealed, and the Court of Appeals for the Federal Circuit vacated and remanded the fees decision for further adjudication. 121 F.4th 1301 (Fed. Cir. 2024).

Upon remand, the parties filed supplemental briefs addressing reasonable basis, and petitioner filed a supplemental motion for attorney's fees and costs. A review of the evidence and arguments under the appellate court's standards shows that Mr. Sheller has supplied sufficient evidence to support the reasonable basis of the claim that the vaccines caused Daniel's unfortunate death. Accordingly, Mr. Sheller is awarded attorney's fees and costs in the amount of **$345,236.64.**

## I.   Background

### A.   Medical History

Daniel's life was tragically short. He was born on April 14, 2016, and died on June 23, 2016. Exhibit 2 at 2, 4.

Before Daniel died, his pediatrician evaluated him on April 19, 2016, April 26, 2016, and June 14, 2016. Exhibit 1 at 3-8. The pediatrician did not identify any concerns that were implicated in Daniel's death.

During the June 14, 2016 well-baby appointment, Daniel received the Pentacel vaccine. Exhibit 1 at 2-4. A week later, Daniel received the Prevnar 13 vaccine. Id. at 2 (June 21, 2016).

On June 23, 2016, Daniel was placed face-up on a couch with a blanket around 11:00 A.M. Exhibit 3 at 3. The caregiver called emergency medical services at 1:43 P.M. and when they arrived Daniel did not have a pulse and was not respiring. Exhibit 2 at 25; exhibit 3 at 8. Daniel was transported to a hospital. There, doctors attempted to revive him but were not successful. Exhibit 2 at 2-4. The initial diagnosis was "[s]udden death uncertain causation." Id. at 4.

Dr. Montez performed an autopsy on June 29, 2016. Dr. Montez did not determine a cause of death. Exhibit 3 at 12, 16. The brain weight was normal (780 grams). Id. at 19. Daniel's lungs showed dependent congestion. Id. at 20.

**B.   Procedural History**

    1.   Merits

Within four days of Daniel's death, Mr. Sheller had retained John Caldwell, an attorney at Maglio, Christopher & Toale, P.C. See Exhibit 8 (timesheets).[2] Among Mr. Caldwell's first tasks was a "Telephone conference with coroner's office re: delay of autopsy pending lab instructions."

Over the next month, Mr. Caldwell continued to correspond with the coroner's office and other labs regarding possible testing. Meanwhile, paralegals collected Daniel's medical records. In November 2016, Mr. Caldwell reviewed the autopsy record.

In December 2016, Mr. Caldwell conferred with an immunologist. He more intensely engaged with an expert in March and April 2017. Time entries from this time mentioned Dr. Akbari.

About one year later, Mr. Caldwell reviewed a preliminary assessment from Dr. Akbari (April 3, 2018). Paralegals also pursued medical records.

Mr. Caldwell drafted a petition, which was filed on May 17, 2018. This date is approximately 23 months after Daniel died. The petition alleged that the Pentacel and Prevnar 13 vaccines caused Daniel's death. Pet. ¶¶ 2, 9.[3]

Mr. Sheller's motion for fees emphasized that before Mr. Caldwell filed a petition, a special master had found childhood vaccines caused an infant's death. Boatmon v. Sec'y of Health & Hum. Servs., No. 13-611V, 2017 WL 3432329 (Fed. Cl. Spec. Mstr. July 10, 2017). In doing so, the special master credited an opinion offered by Douglas Miller, a pathologist. To Mr. Sheller, the special

---

[2] Information about the activities of Mr. Sheller's attorneys can be found in the timesheets, which are not again cited in this section.

[3] The petition also mentions that Daniel received the hepatitis B vaccine when he was born. However, the arguments regarding the reasonable basis for the claims set forth in the petition do not involve the hepatitis B vaccine given at birth.

3

master's ruling supported a finding of reasonable basis. Oral Arg. Tr. at 39-40. However, the Secretary maintained Boatmon affects good faith only. Id. at 43.

Less than one week after Mr. Caldwell submitted the petition, Mr. Caldwell filed Exhibits 1-6 on behalf of Mr. Sheller. This set of exhibits includes Dr. Akbari's preliminary assessment, dated April 4, 2018. Dr. Akbari stated he had reviewed the medical records and summarized them in one paragraph. Dr. Akbari wrote: "While it is premature to make any conclusions at this stage, I certainly believe it is reasonable to request additional tests on the clinical samples obtained from the patient." Exhibit 5 at 1. Dr. Akbari offered reasons for requesting additional tests. Dr. Akbari repeated his recommendation for additional testing: "While I cannot draw any definitive conclusions at this stage, based on the findings of the autopsy, the absence of any pre-death clinical issues, and my previous research as to potential causes of death following Prevnar 13, I believe it is medically reasonable to request additional tests on the autopsy clinical samples currently in bio-storage." Id. at 2. After describing where those additional tests could be conducted, Dr. Akbari closed his letter to Mr. Caldwell by stating: "In summary, I firmly believe at this juncture that, based on the substantial pulmonary edema in this two-month-old with no apparent cause other than the vaccines, it is reasonable to conduct further inquiry including laboratory work I have recommended here and previously." Id.

The next important event occurred outside of the four corners of the Sheller case. On July 3, 2018, a judge from the Court of Federal Claims granted a motion for review in Boatmon. The judge ruled that the special master improperly applied the standard of proof as required in vaccine cases when he departed from the decisions of other special masters in deciding to credit the theory advanced by Dr. Miller, considering that Dr. Miller's theory had not been accepted by other SIDS experts. Boatmon v. Sec'y of Health & Hum. Servs., 138 Fed. Cl. 566, 571-72 (2018). The Court found issue with the special master's lack of acknowledgement of other vaccine cases reaching opposite conclusions. Id. As such, the court held that "the Special Master in this case ha[d] applied a standard so low as to constitute clear error." Id. at 572.

The outcome in Boatmon at the Court of Federal Claims did not halt Mr. Sheller's case. The Secretary evaluated the evidence and recommended against compensation. Resp't's Rep., filed Dec. 7, 2018. The Secretary specifically argued that Dr. Akbari's letter did not support causation. Id. at 5.

The parties planned to test some of Daniel's tissues. Order, issued Dec. 20, 2018. Mr. Caldwell researched causes of sudden infant death syndrome for more

than seven hours. Fee Exhibit 8 at 10 (entries for February 2-8, 2019). A paralegal attempted to get material from the local sheriff's office. Mr. Sheller was granted authority to obtain autopsy slides. Order, issued Mar. 28, 2019.

In May 2009, the managing partner of the law firm reviewed the case. He assigned the case to Anne Toale, who acted as counsel of record for the remainder of this phase of the case. Ms. Toale and staff continued their attempts to get additional material from the autopsy. In the oral argument regarding petitioner's pending motion for attorneys' fees and costs, Ms. Toale maintained that in infant death cases it is "impossible" to obtain autopsy material without a subpoena. Oral Arg. Tr. at 35. She noted that attorneys in such cases often seek to obtain additional cuts of slides to identify additional tissues for experts to examine. Id. at 42-43.

Ms. Toale began working with Dr. Miller in July 2019. Dr. Miller anticipated reviewing autopsy slides in August 2019. Pet'r's Status Rep., filed July 26, 2019. In early September, Dr. Miller reviewed autopsy slides for 2.5 hours. Fee exhibit 9 at 40. Dr. Miller communicated with Ms. Toale the next day for 15 minutes and Dr. Miller's email was later filed as exhibit 20.

On November 7, 2019, the Federal Circuit affirmed the judgment in Boatmon. While the Federal Circuit agreed with the outcome (a denial of compensation), the Federal Circuit did not entirely agree with the reasoning of the judge. The Federal Circuit held that the judge was incorrect in requiring that the special master distinguish his ruling from decisions of other special masters. Boatmon v. Sec'y of Health & Hum. Servs., 941 F.3d 1351, 1358 (Fed. Cir. 2019). Further, the Federal Circuit held that the judge was incorrect in implying that special masters must apply Daubert standards in assessing expert testimony and that all Daubert factors must be satisfied. Id. at 1359. On the other hand, the Federal Circuit ruled that the special master "deviated from the correct 'reputable,' 'sound and reliable' standard and articulated a lower 'reasonable' standard." Id. at 1359.

In the months after Boatmon was issued, Ms. Toale communicated with Mr. Sheller, Dr. Miller, and toxicology labs multiple times. It appears that these efforts were not fruitful as Mr. Sheller determined he could not establish his case. Pet'r's Mot. to Dismiss, filed Jan. 10, 2020.

5

Based upon Mr. Sheller's motion, the case was dismissed. Decision, 2020 WL 618547 (Jan. 13, 2020). At the time of the dismissal, the record included seven exhibits.

### 2.     Fees Litigation at Office of Special Masters

Mr. Sheller requested an award of attorney's fees and costs. Pet'r's Mot., filed March 19, 2020. Ms. Toale maintained that Dr. Akbari's letter established reasonable basis. Exhibit 11 ¶ 22. With that motion, Mr. Sheller submitted five affidavits to substantiate the amount requested. Exhibits 8-12.

The Secretary's initial response was his generic response. The Secretary stated he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met." Resp't's Resp., filed Apr. 2, 2020, at 2. The Secretary also did not interpose any specific objections regarding the amount requested.

The undersigned had questions about the positions of both parties. Accordingly, the parties were directed to file additional briefs. Order, issued July 28, 2020.

Mr. Sheller developed his arguments regarding reasonable basis. Pet'r's Supp., filed Aug. 24, 2020. With this submission, Mr. Sheller also submitted six new exhibits, including the package insert for the vaccines Daniel received, Pentacel and Prevnar 13. Mr. Sheller emphasized Dr. Akbari's report. But, Mr. Sheller also explained "Dr. Miller's assessment led to the claim's dismissal." Pet'r's Supp. at 16.

The Secretary addressed Dr. Akbari. He argued: "Dr. Akbari's statement is . . . merely speculation that petitioner may have a claim, and by itself does not establish reasonable basis." Resp't's Resp., filed Sept. 23, 2020, at 3. Upon review, the undersigned had additional questions. Order, issued Aug. 23, 2021.

Mr. Sheller again advanced arguments regarding reasonable basis. Pet'r's Memo., filed Nov. 22, 2022. With this submission, Mr. Sheller filed more than 25 additional articles. Exhibits 20-58. Of this group, Mr. Sheller relied most heavily upon a September 9, 2021 email from Dr. Miller to Ms. Toale. Dr. Miller stated he had reviewed the autopsy including the slides. He stated: "this is a classical case of SIDS." Exhibit 20. He also indicated "there are no sections of medulla to prove any structural abnormality, and there are no good sections of each hippocampus to evaluate for dentate gyrus dysplasia. I could write a report based on statistics from Dr. Kinney's work . . . But this gets us no further than <u>Boatmon</u> and we are all

waiting [for] the appellate court to issue a decision." Id. He concluded: "Let me know if you want me to do more." Id.

The Secretary responded. Relying upon Goodgame v. Sec'y of Health & Hum. Servs., 157 Fed. Cl. 62 (2021), the Secretary "move[d] to strike medical articles that petitioner filed after the entitlement stage ended." Resp't's Resp, filed Dec. 22, 2021, at 1. The Secretary further argued that "petitioner has failed to present more than a scintilla of evidence in this case to satisfy Althen prong one." Id. at 5.

Mr. Sheller's reply primarily maintained that the Secretary's motion to strike medical articles filed after entitlement should be denied. Pet'r's Reply, filed Jan. 8, 2022.

An oral argument was held on June 7, 2022. See Order, issued Apr. 26, 2022. One day before the oral argument, Mr. Sheller submitted a notice of additional authority identifying cases discussing reasonable basis. A decision issued on August 15, 2022, finding that Mr. Sheller did not supply sufficient evidence under the first or second Althen prongs to support the reasonable basis of the claim the vaccines caused Daniel's unfortunate death. Accordingly, the motion for attorney's fees and costs was denied. 2022 WL 4075946.

### 3. Fees Litigation at Appellate Tribunals

Mr. Sheller filed a motion for review on September 14, 2022, which was denied on February 6, 2023. 164 Fed. Cl. 398 (2023).

Mr. Sheller appealed to the Court of Appeals for the Federal Circuit presenting three arguments. The Federal Circuit agreed in part and disagreed in part. The Federal Circuit ruled that a special master may structure an analysis of reasonable basis around the Althen prongs. The Federal Circuit also ruled that the striking of articles submitted during the briefing regarding reasonable basis was not arbitrary.

However, the Federal Circuit disagreed with the assessment of reasonable basis. The Federal Circuit ruled that a relevant consideration was whether Mr. Sheller's causation theory had been a reasonable theory at the time that the petition was filed. The Federal Circuit noted that, at that time, the theory "was a potentially viable causation theory" that had been successful in the Boatmon case. 121 F.4th at 1308. Concluding that "the Special Master's decision in Boatmon

7

was sufficient to establish a reasonable basis under the first Althen factor," the Federal Circuit vacated the First Fees Decision, directing the undersigned to "determine, in his discretion, whether attorneys' fees should be granted in this case." Id. The Federal Circuit further instructed that, "[in] exercising his discretion, the Special Master must articulate the basis for any discretionary decision to grant or deny fees, keeping in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance." Id. at 1308-09.

### 4. Post-Remand Litigation at the Office of Special Masters

After the mandate issued, the parties were ordered to file briefs addressing whether the Federal Circuit had determined that petitioner had satisfied the reasonable basis standard. Order, issued Jan. 23, 2025. If not, the parties were directed to discuss whether Althen prong 2 and Perreira v. Sec'y of Health & Hum. Servs., 33 F.3d 1375 (Fed. Cir. 1994) (which demonstrates that reasonable basis may be lost as litigation continues) are relevant to the question of reasonable basis. The order also suggested that the parties may wish to address Cottingham v. Sec'y of Health & Hum. Servs., No. 15-1291V, 2021 WL 6881248, at *55 (Fed. Cl. Spec. Mstr. Sept. 27, 2021), mot. for rev. denied, 159 Fed. Cl. 328 (2022), aff'd without op., No. 2022-1737, 2023 WL 7545047 (Fed. Cir. 2023), and asked that the parties address whether there were any reasons for the undersigned to exercise discretion and not award fees and costs. Finally, Mr. Sheller was invited to supplement his original motion for attorneys' fees and costs to reflect the work performed since that motion was filed.

Mr. Sheller argued that the Federal Circuit had determined that he had satisfied the reasonable basis standard. He distinguished his case from Cottingham v. Sec'y of Health & Hum. Servs., 971 F.3d 1337 (Fed. Cir. 2020), arguing that in his case, the Federal Circuit "decided the issue of reasonable basis, precluding this issue from consideration on remand." Mr. Sheller argued that "the only issue remaining for remand is the special master's discretion to grant or deny fees despite the presence of reasonable basis." Pet'r's Post-Remand Br., filed Feb. 24, 2025 at 6-7.

As to Perreira, Mr. Sheller noted that the Federal Circuit "alluded to the Perreira concept of reasonable basis as an element that could be lost as a case progressed when it stated, 'We think it reasonable for Petitioner to postpone additional evidence development as to the application of the Triple Risk Theory to this case until our decision in the Boatmon appeal.'" Id. at 12 (citing Sheller, 121

8

F.4th at 1308). Mr. Sheller argued that the Federal Circuit's approval of his approach, in addition to his decision to dismiss the case after the Boatmon decision, further demonstrates the Federal Circuit's finding of reasonable basis. Id. at 13-14. Finally, Mr. Sheller stated that there was no reason to deny reasonable attorneys' fees and costs.

In response, the Secretary stated that the "Federal Circuit did not expressly find that petitioner satisfied the reasonable basis standard," but conceded that "the opinion in its entirety, however, strongly indicates that the Federal Circuit likely would find petitioner had a reasonable basis at the time of filing." Resp't's Post-Remand Br., filed Mar. 6, 2025, at 2-3. The Secretary later stated that "the Federal Circuit found reasonable petitioner's reliance on the Triple Risk Model theory at the time of filing and postponement of evidence until the Federal Circuit's Boatmon decision issued." Id. at 6.

The Secretary argued that both Althen prong 2 and Perreira would be relevant to the question of reasonable basis, but conceded that these factors would not affect the outcome here given the Federal Circuit's finding of reasonable basis. Resp't's Post-Remand Br. at 4-5. The Secretary "[did] not wish to contradict the Federal Circuit in challenging petitioner's reasonableness of not supplying Althen prong two evidence under the specific circumstances of this case," and stated that "Perreira does not appear to affect petitioner's application for attorneys' fees and costs under the circumstances presented in this matter." Id. The Secretary "defer[red] to the Special Master whether to award or reduce attorneys' fees and costs in his statutorily endowed discretion. . . . [but] reserve[d] the right to assess the reasonableness of petitioner's most recent application for fees and costs."

As invited, Mr. Sheller also supplemented his motion for attorney's fees and costs on March 4, 2025, requesting a total award of $345,236.64 in attorney's fees and costs. Mr. Sheller included supporting documentation, including invoices, with his supplemental motion. Exhibits 63 to 67. The Secretary filed his standard response, requesting "that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs should the Court find that the statutory elements are met." Resp't's Resp., filed Mar. 17, 2025 at 4. In reply, Mr. Sheller maintained:

> The Petition was filed in good faith and with a reasonable basis to pursue this claim to its conclusion. Sufficient and complete evidence was filed herein on the reasonableness of the requested attorneys' fees and case costs. The Court must rule on the evidence before it. For the foregoing reasons, the

9

fees and costs incurred herein are reasonable and should be awarded without reduction.

Pet'r's Reply, filed Mar. 19, 2025 at 3. With the submission of Mr. Sheller's reply, the matter is ready for adjudication.

## II. Discussion

The Federal Circuit's opinion leaves potentially three topics for resolution. First, whether Mr. Sheller satisfied the reasonable basis standard. Second, assuming that Mr. Sheller is eligible for an award of attorneys' fees and costs because he meets the reasonable basis standard, whether he should be awarded reasonable attorneys' fees as a matter of discretion. Third, assuming that Mr. Sheller should be awarded attorneys' fees and costs, what is a reasonable amount of attorneys' fees and costs.

### A. Reasonable Basis

Mr. Sheller argues that, in its opinion vacating and remanding the August 15, 2022 decision denying attorney's fees and costs, "the Federal Circuit determined the petitioner satisfied the reasonable basis standard and found it was error to find petitioner's theory did not pass the reasonable basis threshold," and that, therefore, "the special master is not required to assess whether petitioner meets the reasonable basis standard on remand." Pet'r's Post-Remand Br. at 1-2 (citing Sheller, 121 F.4th at 1308).

Although the Secretary noted that the "Federal Circuit did not expressly find that petitioner satisfied the reasonable basis standard," he conceded that the "opinion in its entirety . . . strongly indicates that the Federal Circuit likely would find petitioner had a reasonable basis for his claim at the time of filing." Resp't's Post-Remand Br. at 2. The Secretary understood the remand "to vest the Special Master with discretion to determine whether a reasonable basis exists—as well as discretion to deny fees even if the Special Master resolves the reasonable basis question in petitioner's favor," but again acknowledged that "the Federal Circuit nonetheless indicated that it would likely ultimately hold that a reasonable basis at the time of filing existed." Id. at 2-3.

Given the Secretary's interpretation of the Federal Circuit's findings under the first Althen prong and his unwillingness to challenge the finding of reasonable basis under the second prong, there appears to be no real dispute over the meaning

10

of the Federal Circuit's opinion. The Federal Circuit's conclusion that "the Special Master's decision in Boatmon was sufficient to establish a reasonable basis under the first Althen factor" appears to settle the question of reasonable basis. See Engels Industries, Inc. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("the spirit of the mandate must be considered"). This is the position that Mr. Sheller takes, and the Secretary does not take a firm position to the contrary. With this view that reasonable basis for Mr. Sheller's claim has been established, the next issue is whether attorneys' fees and costs should be awarded as a matter of discretion.

### B. Discretion to Award Attorneys' Fees and Costs

The Federal Circuit recognized that a finding of reasonable basis does not necessarily determine whether an unsuccessful petitioner should be awarded attorneys' fees and costs. Sheller, 121 F.4th at 1308.

Mr. Sheller argues that, given the finding of reasonable basis, there are no other reasons to deny reasonable attorneys' fees and costs. Pet'r's Post-Remand Br. at 17. He further contends that, given the focus thus far on reasonable basis, a denial of fees "on a new, previously undisclosed basis" would be an abuse of discretion. Id. at 18. Mr. Sheller also notes that fees were ultimately awarded in Boatmon, and highlights that "the vast majority of fees incurred in this case" were during the appellate phases. Id. at 19. With the good faith and reasonable basis standards met, Mr. Sheller argues that no "reasonable, record-based grounds exist on which to base such an unprecedented discretionary decision to deny fees." Id. at 20.

The Secretary did not state any reason why fees and costs should not be awarded. Instead, the Secretary stated: "Under the specific circumstances in this matter, where the Federal Circuit found the Triple Risk Model theory to rise to more than a mere scintilla of evidence under Althen prong one due to the success of the theory in Boatmon at the time of filing, and petitioner's in part successful appeal to the Federal Circuit regarding the same, respondent defers to the Special Master whether to award or reduce attorneys' fees and costs in his statutorily endowed discretion." Resp't's Post-Remand Br. at 6-7.

"[W]hile it may be correct to say that a finding of good faith and reasonable basis makes a petitioner 'eligible' for an award of reasonable attorneys' fees and costs, in practice these twin findings have led to an award of attorneys' fees and costs." Cottingham, 2021 WL 6881248, at *55. The Secretary did not cite any

11

cases to the contrary, nor did he push for a denial of fees. Under the circumstances of this case, there is no need to deny fees as a matter of discretion. With the uncontested good faith and the Federal Circuit's determination of reasonable basis, Mr. Sheller is awarded reasonable attorneys' fees and costs.

### C. Reasonable Amount of Attorneys' Fees and Costs

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The undersigned is obligated to assess the reasonableness of the request for attorneys' fees and costs regardless of the lack of objection from the Secretary. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton, 3 F.3d at 1521. When an attorney does the work of a paralegal or administrative assistant, he or she should be paid a rate commensurate with the nature of the work. See Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 425 (2009) (noting that "the Special Master exercised appropriate discretion in denying requested costs for work performed by Petitioner's counsel's associate" when the special master determined "that the associate's time spent obtaining medical records was more consistent with paralegal duties"); Riggins v. Sec'y of Health & Human Servs., No. 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009), mot. for rev. den'd (slip op. Dec. 10, 2009), aff'd, 406 F. App'x 479 (Fed. Cir. 2011).

#### 1. Assessment of Hourly Rates

Two attorneys, Anne Toale and John Caldwell, did the majority of the work on Mr. Sheller's case at trial level and during the initial fees litigation. Exhibit 8 at 17. Ms. Toale's hourly rate ranged from $378 in 2017 to $570 in 2024. Exhibit 8 at 17; Exhibit 59 at 29; Exhibit 63 at 20. Mr. Caldwell's rates ranged from $356 in 2016 to $400 in 2019. Exhibit 8 at 17.

Attorneys Jessica Olins (who billed $225 - $290 from 2020 to 2022), and LeeAnne Pedrick ($179 - $220 from 2020 to 2022) also performed work during the attorney's fees phase. Exhibit 59 at 22, 29.

Additional, minimal supporting work was performed by attorneys Altom Maglio (at a rate of $400 in 2019), Amber Wilson ($323 in 2019), Diana Stadelnikas ($359 in 2016). Exhibit 8 at 17. Remaining work was performed by paralegals at rates ranging from $135 to $170 between 2016 and 2022. Id.; Exhibit 59 at 21.

Jennifer Maglio took over the case for the purposes of appeal. Exhibit 66 at ¶12. She drafted the motion for review, and supervised her associate in preparing the appellate briefs. She also assisted trial counsel in preparing for oral argument. Id. at ¶12. Ms. Maglio billed $460 per hour in 2022, increasing over the years to $572 in 2025. Exhibit 63 at 20.

Benjamin Christian, an appellate attorney with the firm, also worked on the case. Exhibit 67 at ¶2. He assisted in drafting the motion for review, and drafted the Initial Brief and Reply Brief on appeal. Id. at ¶12. Mr. Christian's rates increased from $315 to $385 between 2022 and 2024. Exhibit 63 at 20.

During the appeals phase, paralegal rates ranged from to $170 in 2022 to $205 in 2025. Exhibit 63 at 20.

The rates requested are consistent with what these attorneys have previously been awarded for their Vaccine Program work and the undersigned finds them to be reasonable herein. See, e.g., Morrison v. Sec'y of Health & Hum. Servs., No. 18-386V, 2024 WL 5297958 (Fed. Cl. Spec. Mstr. Dec. 2, 2024); Bielak v. Sec'y of Health & Hum. Servs., No. 18-761V, 2023 WL 3742055 (Fed. Cl. Spec. Mstr. May 31, 2023); Tullio v. Sec'y of Health & Hum. Servs., No. 15-0051V, 2021 WL 5854057, at *2 (Fed. Cl. Nov. 10, 2021); Dezern v. Sec'y of Health & Hum. Servs., No. 13-643V, 2016 WL 6678496 (Fed. Cl. Spec. Mstr. Oct. 14, 2016).

As to the paralegal rates, the proposed amounts are reasonable.

2. <u>Assessment of Number of Hours</u>

In general, the invoices for Mr. Sheller's case contains sufficient detail to assess the activities for their reasonableness. The time requested generally appears reasonable. The approximate hours logged during each phase of the case are presented in the table below.

The Secretary did not interpose any objection to the amount requested in attorneys' fees and costs. At least as far as the application for supplemental fees, the Secretary's lack of objection may be considered in determining the amount of attorneys' fees and costs. Vaccine Rule 13(a)(3).

Given the information presented in the attorneys' timesheets and the lack of objection from the Secretary, the number of hours charged is reasonable.

| Phase | Appx Attorney Hours | Appx Paralegal Hours | Total Value |
|---|---|---|---|
| Entitlement | 145 | 32 | $60,460.50 |
| Fees at OSM | 205 | 15 | $68,815.90 |
| Mot. for Rev. | 63 | 2 | $29,106.00 |
| Fed. Cir. Appeal | 292 | 26 | $126,722.00 |
| Post-Remand Fees at OSM | 33 | 4 | $19,819.50 |
| TOTAL | 738 | 79 | $304,923.90 |

3. <u>Costs Incurred</u>

Mr. Sheller's counsel incurred $26,907.86 in costs during the initial phase of this case, plus an additional $13,403.88 on review and appeal. This amounts to $40,311.74.

The costs incurred during the initial phase of the case included costs of medical records, mailing, specimen storage, traveling to visit Mr. Sheller, and expert fees. Exhibit 9. Dr. Akbari charged a rate of $500 per hour. This is a rate consistently awarded to Dr. Akbari in the Vaccine Program. <u>See, e.g.</u>, <u>Bristow v. Sec'y of Health & Hum. Servs.</u>, No. 19-457V, 2022 WL 17821111, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (listing cases in which Dr. Akbari has been awarded $500 per hour). Dr. Akbari spent a total of 37 hours working on Mr. Sheller's case. Exhibit 9 at 2 (05/25/2017 and 04/06/2018 entries). This time

14

consisted of reviewing files, conducting literature searches, speaking with attorneys, reviewing labs to perform clinical tests, and preparing his report. Exhibit 9 at 22, 26. The hours expended were reasonable.

Mr. Sheller requests $3,750 to compensate his other expert, Dr. Miller. Exhibit 9 at 3. Dr. Miller's rate is $500 per hour. His time consisted of reviewing medical records and autopsy slides, preparing a report of his preliminary impressions, and speaking with attorneys, for a total of 7.5 hours of work. Id. at 40. Dr. Miller has previously been awarded $500 per hour. See, e.g., Roscoe v. Sec'y of Health & Hum. Servs., No. 11-206V, 2021 WL 3746783, at *3 (Fed. Cl. Spec. Mstr. July 30, 2021) (listing cases in which Dr. Miller has been awarded $500 per hour). The rate and time expended are reasonable.

The costs on review and appeal were associated with filing fees, printing costs, research, and travel for the oral argument. Exhibit 64 at 1-2. These expenses are reasonable.

### III. Conclusion

Mr. Sheller requests a total award of attorney's fees and costs in the amount of **$345,236.64.** Mr. Sheller's attorney and attorney staff have requested hourly rates that are consistent with the rates previously awarded and/or are reasonable. The number of hours is reasonable, and the costs incurred were reasonable. Thus, the amount requested is reasonable.

Mr. Sheller is awarded **$345,236.64** to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4] The Clerk's Office is also directed to provide this decision to the presiding judge. See Vaccine Rule 28.1(a).

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.